IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TREKELL GAITHER, *et al.*,

    *Plaintiffs*, on behalf of themselves
    and others similarly situated,

    v.

                                Civil Action No. ELH-18-1447

DAVI TRANSPORTATION SERVICES,
LLC, *et al.*,

    *Defendants*.

## MEMORANDUM OPINION

This case concerns claims of denial of overtime and hourly wages lodged by non-emergency medical transportation "paratransit drivers." ECF 1 (the "Complaint"), ¶ 1. Plaintiffs Trekell Gaither, Whitney Davis, Wayne Flemming, Crystal Kendricks, and Robert Lemon filed suit against defendants Davi Transportation Services, LLC ("Davi" or "Davi Transportation"); James Davis, the owner of Davi Transportation; and Transdev Services, Inc., f/k/a Veolia Transportation Services, Inc. ("Transdev"). *Id.*

In particular, plaintiffs allege violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; the Maryland Wage and Hour Law ("MWHL"), Md. Code (2016 Repl. Vol., 2017 Supp.), §§ 3-401 *et seq.* of the Labor and Employment Article ("L.E."); and the Maryland Wage Payment and Collection Law ("MWCPL"), L.E. §§ 3-501 *et seq. Id.* ¶ 2. In addition, plaintiffs claim violations of Baltimore City Code, Art. 5, § 26. *Id.* Numerous exhibits were appended to the suit.

According to the Complaint, plaintiffs "drove vehicles owned by" Davi Transportation and Davis to transport "Medicaid recipients" in the Baltimore City area, based on "individualized routes created by Transdev." ECF 1, ¶ 1. The routes required plaintiffs "to work shifts lasting up

to 15 hours," but defendants allegedly paid plaintiffs only "a few dollars for each pickup, and just one dollar each time a person scheduled to be picked up was absent." *Id*. As a result, plaintiffs' "hourly wages fell far below state and federal minimum wage rates," and even further "below Baltimore City's living wage rates[.]" *Id*. Therefore, they seek recovery of unpaid wages, damages, as well as attorneys' fees and costs.

Now pending is plaintiffs' unopposed motion for default judgment against Davi Transportation. ECF 34. The motion is supported by a memorandum of law (ECF 34-1) (collectively, the "Motion") and several exhibits. ECF 34-3 – ECF 34-10. A copy of the Motion was sent to Davi's resident agent, at the last known address. ECF 34 at 2.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall grant the Motion in part and deny it in part.

## I.     Factual and Procedural Background

By letter of August 2, 2018 (ECF 13), plaintiffs notified the Court that Davis filed for bankruptcy on December 5, 2017. Plaintiffs acknowledged that, pursuant to 11 U.S.C. § 362, "this matter is stayed as to Mr. Davis …." *Id.* However, they asserted that the matter "may proceed against other Defendants, who have not filed for bankruptcy." *Id.*

On December 3, 2018, plaintiffs and Transdev jointly moved the Court to approve their Settlement Agreement (ECF 26), in which Transdev agreed to pay plaintiffs a total of $130,000, in addition to $30,000 in attorneys' fees and costs. ECF 26-1 at 7. By Order of the same date (ECF 27), I approved the Settlement Agreement.[1]

---

[1] I also denied, as moot, Transdev's motion to dismiss (ECF 9).

In light of the Settlement Agreement, plaintiffs and Transdev stipulated to the dismissal of plaintiffs' claims against Transdev, with prejudice. ECF 30. By marginal Order of December 6, 2018 (ECF 31), I approved the parties' stipulation of dismissal.

Davi Transportation was served on June 25, 2018. ECF 8. But, Davi never responded to the suit. *See* Docket. On August 8, 2018, plaintiffs filed a "Motion for Clerk's Entry of Default" against Davi Transportation (ECF 14), which was entered by the Clerk on December 4, 2018. ECF 28. And, on January 30, 2019, plaintiffs moved for default judgment as to Davi Transportation. ECF 34. They requested a total award of unpaid wages and damages of $276,941.65, plus attorneys' fees and costs of $26,776.03. *Id.*

In their submission, plaintiffs did not address the implications of granting default judgment as to Davi Transportation while the litigation was stayed as to its owner, codefendant James Davis, because of his bankruptcy proceedings. The Court subsequently learned that the bankruptcy court had granted a discharge to Mr. Davis on March 26, 2019, thereby terminating the automatic stay. *See In re James Davis*, RAG-17-26336, ECF 94 (Bankr. D. Md.) (Bankruptcy Discharge).

In an Order of June 25, 2019 (ECF 35), the Court directed plaintiffs to submit a status report. In plaintiffs' report of July 9, 2019 (ECF 37), they asserted: "Granting default judgment as to Davi Transportation while the litigation is stayed as to Mr. Davis is appropriate because Defendant Davis and Defendant Davi Transportation are joint employers of Plaintiffs. *Id.* at 1 (citing ECF 1, ¶¶3, 15-17, 20, 22-27). Plaintiffs claimed that "joint employers are jointly and separately liable for FLSA violations" under the FLSA and Maryland wage and hour laws. ECF 37 at 1 (citing *Salinas v. Comm. Interiors, Inc.*, 848 F.3d 125, 141-42 (4th Cir. 2017)).

Further, plaintiffs reported that the bankruptcy court discharged most of Mr. Davis's debts, "including the claims of Plaintiffs." ECF 37 at 2 (citing *Davis*, RAG-17-26336, ECF 94 (providing

that "[m]ost debts are discharged" and not listing any exception under which plaintiffs' claims would fall)).  Therefore, plaintiffs stated that "once the Court issues a decision regarding default judgment as to Davi Transportation, Mr. Davis will be the only remaining Defendant" in this case, and plaintiffs "will move to dismiss the action.  ECF 37 at 2.

Additional facts are discussed, *infra*.

## II.    Legal Standard

Rule 55(b) of the Federal Rules of Civil procedure governs default judgments.   In particular, Rule 55(b)(1) provides that the clerk may enter a default judgment if the plaintiff's claim is "for a sum certain or a sum that can be made certain by computation."[2] But, "[a] plaintiff's assertion of a sum in a complaint does not make the sum 'certain' unless the plaintiff claims liquidated damages; otherwise the complaint must be supported by affidavit or documentary evidence. *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794 (D. Md. 2010) (Grimm, M.J.).[3]

To be sure, the United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on the merits."  *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993); *see Tazco, Inc. v. Director, Office of Workers' Compensation Program,* 895 F. 2d 949, 950 (4th Cir. 1990).  But, that policy is not absolute.  Default judgment "'is appropriate when the "adversary process has been halted because of an essentially unresponsive party.'"  *Entrepreneur Media, Inc. v. JMD Enter. Grp., LLC*, 958 F. Supp. 2d 588, 593 (D. Md. 2013) (quoting *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005)).

---

[2] If the sum is not certain or ascertainable through computation, the court looks to Rule 55(b)(2).

[3] Judge Grimm now serves as a United States District Judge.  He authored *Monge* when he was a United States Magistrate Judge.

Upon the entry of default against a party, the court must determine whether the undisputed factual allegations constitute a legitimate cause of action. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *see also* 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2688 (3d ed., 2010 Supp.) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability."). If the court is satisfied that liability has been established, it must then determine the appropriate amount of damages. *Ryan*, 253 F.3d at 780-81.

Allegations "relating to the amount of damages" are not deemed admitted based on a defendant's failure to respond to a suit. Fed R. Civ. P. 8(b)(6); *see Ryan*, 253 F.3d at 780 ("'[D]efault is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover'") (citation omitted); *Monge*, 751 Supp. 2d at 794; *Trs. of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, Inc.*, DKC-08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."); *Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, 6:09-cv-00004, 2009 WL 1872535, at *1 (W.D. Va. June 30, 2009) ("Upon default judgment, Plaintiff's factual allegations are accepted as true for all purposes excluding determination of damages."). Rather, the court must make an independent determination regarding allegations as to damages. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999).

In so doing, the court may conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). However, the court may also make a determination of damages without a hearing, so long as there is an adequate evidentiary basis in the record to support an award of the requested damages. *See*

*Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) ("[T]he court may rely on detailed affidavits or documentary evidence to determine the appropriate sum."); *see also Trs. of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc.*, ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011) (determining that, in a case of default judgment against an employer, "the Court may award damages without a hearing if the record supports the damages requested"); *Monge*, 751 F. Supp. 2d at 795 (same); *Pentech Fin. Servs., Inc.*, 2009 WL 1872535, at *2 (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment because plaintiff submitted affidavits and records establishing the amount of damages).

Notably, under Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." *See In re Genesys Data Techs, Inc.*, 204 F.3d 124, 132 (4th Cir. 2000) ("When a Complaint demands a specific amount of damages, courts have generally held that a default judgment cannot award additional damages."). This is because the amount sought as damages might influence the defendant in deciding whether to expend the resources to defend the action. *Monge*, 751 F. Supp. 2d at 796.

### III.     Discussion

### A.     The FLSA

Congress enacted the FLSA in 1938 "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)) (alterations in *Barrentine*); *see Encino Motorcars, LLC v. Navarro*, ___ U.S. ___, 136 S. Ct. 2117, 2121 (2016); *Morrison v. Cty. of Fairfax*, 826 F.3d 758, 761 (4th Cir. 2016); *McFeeley v. Jackson Street Enter., LLC*, 825 F.3d 235, 240 (4th Cir. 2016).

In particular, the FLSA "requires employers to pay overtime to covered employees who work more than 40 hours in a week." *Encino Motorcars, LLC v. Navarro*, ___ U.S. ___, 138 S. Ct. 1134, 1138 (2018) (citation omitted); *see Perez v. Mrtg. Bankers Ass'n*, 575 U.S. 92, 97 (2015); *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27 (2014); *see also Harbourt v. PPE Casino Resorts Md., LLC*, 820 F.3d 655, 658 (4th Cir. 2016) ("The FLSA requires that employers pay employees the minimum hourly wage 'for all hours worked.'") (quoting *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 363 (4th Cir. 2011)).   Moreover, the FLSA has established the "general rule that employers must compensate each employee 'at a rate not less than one and one-half times the regular rate' for all overtime hours that an employee works. The Act defines overtime as employment in excess of forty hours in a single workweek . . . ." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 337 (4th Cir. 2008) (quoting 29 U.S.C. § 207(a)(1)); *see Perez*, 575 U.S. at 97; *Integrity Staffing Sols., Inc.*, 574 U.S. at 31; *Harbourt*, 820 F.3d at 658.

Section 216(b) of 29 U.S.C. states:

> Any employer who violates the provisions of . . . section 207 of this title shall be liable to the employee . . . affected in the amount of . . . their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages. . . . The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

Notably, the FLSA is now "best understood as the 'minimum wage/maximum hour law.'" *Trejo v. Ryman Hospitality Props., Inc.*, 795 F.3d 442, 446 (4th Cir. 2015) (citation omitted); *see United States Dept. of Labor v. Fire & Safety Investigation Consulting Servs., LLC*, 915 F.3d 277, 280 (4th Cir. 2019).  In *Monahan v. Cty. of Chesterfield*, 95 F.3d 1263, 1266-67 (4th Cir. 1996), the Court explained: "The two central themes of the FLSA are its minimum wage and overtime requirements . . . . The FLSA is clearly structured to provide workers with specific minimum protections against excessive work hours and substandard wages."  (Internal quotations omitted).

**B.      State Statutes and the Local Ordinance**

The MWHL is the State's equivalent of the FLSA.  *See Newell v. Runnels*, 407 Md. 578, 650 (2009).  In general, the MWHL governs minimum wages and overtime.  *See* L.E. §§ 3-413, 3-415, 3-420.  It authorizes an employee to bring an action against an employer to recover unpaid wages due under the statute. L.E. § 3-437.  *See generally Friolo v. Frankel*, 373 Md. 501, 819 A.2d 354 (2003). The term "wage" is defined as "all compensation that is due to an employee for employment."  L.E. § 3-401(d).

L.E. § 3-415(a) provides that "each employer shall pay an overtime wage of at least 1.5 times the usual hourly wage."  And, L.E. § 3-420(a) provides that overtime wages shall be computed "on the basis of each hour over 40 hours that an employee works during 1 workweek." L.E. § 3-427(a) provides that "[i]f an employer pays an employee less than the wage required under this subtitle, the employee may bring an action against the employer to recover: 1) the difference between the wage paid to the employee and the wage required under this subtitle; 2) an additional amount equal to the difference between the wage paid to the employee and the wage required … as liquidated damages; and 3) counsel fees and other costs."

Claims under the FLSA and the MWHL can be analyzed together.  This is because "[t]he requirements under the MWHL mirror those of the federal law."  *Turner v. Human Genome Sciences, Inc.*, 292 F. Supp. 738, 744 (D. Md. 2003); *see Friolo*, 373 Md. at 513, 819 A.2d at 361.

The MWPCL, also known as the Wage Act, provides, *inter alia*, that an employer "shall pay the employee all wages due upon termination."  L.E. § 3-505(a). Moreover, L.E. § 3-507.1(a) authorizes an employee's cause of action against the employer.  And, L.E. § 3-507.1(b) provides that, if "a court finds that an employer withheld the wage of an employee in violation of this subtitle

and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs."

The MWPCL "sets *specific terms* for payment mandated elsewhere in the Wage and Hour Law." *Campusano v. Lusitano Construction, LLC*, 208 Md. App. 29, 37, 56 A.3d 303, 308 (2012) (emphasis in *Campusano*).  As show, like the MWHL, the MWPCL provides an employee with the right to bring a civil suit against an employer to recover unpaid wages.  *See* L.E. § 3-507.2(a); *Balt. Harbor Charters, Ltd. v. Ayd*, 365 Md. 366, 382-83, 780 A.2d 303, 312-13 (2001); *Mohiuddin v. Doctor's Billing & Mgmt. Solutions, Inc.*, 196 Md. App. 439, 446, 9 A.3d 859, 863 (2010).

The Wage Act "protects employees from wrongful withholding of wages upon termination." *Stevenson v. Branch Banking and Trust Corp., t/a BB&T*, 159 Md. App. 620, 635, 861 A.2d 735, 743 (2004) (citing L.E. § 3-505).  "The principal purpose of the Act 'was to provide a vehicle for employees to collect, and an incentive for employers to pay, back wages.'" *Medex v. McCabe*, 372 Md. 28, 39, 811 A.2d 297, 304 (2002) (citation omitted).  The Wage Act does not focus on "the amount of wages payable but rather the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment." *Friolo*, 373 Md. at 513, 819 A.2d at 362.

The term "wage" includes commissions, bonuses when they are compensation for services and not a gratuity, and work-related incentive fees.  L.E. § 3-501(c)(2); *see Medex*, 372 Md. at 35-37, 811 A.2d at 302; *Whiting-Turner v. Fitzpatrick*, 366 Md. 295, 306, 783 A.2d 667, 673 (2001).  If "a court finds that an employer withheld the wages of an employee in violation of [the MWPCL] and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs."  L.E. § 3-507.1(b).

The Baltimore City Code requires that "service workers" performing work under "service contracts" with the City be paid, at minimum, the "living hourly wage rate." Balt. City Code, Art. 5, §§ 26-2, 26-5.[4]  In addition, the Baltimore City Code requires that those workers be paid an overtime rate of 1.5 times the living hourly wage rate for all hours worked in excess of 8 hours in any workday, or 40 hours in any work week. *Id*. § 26-6.

### C.      Default Judgment as to Davi

As discussed, on December 6, 2018, the Court approved the stipulated dismissal of Transdev as a defendant, in light of its settlement with plaintiffs. ECF 31. As a result, only two defendants remained: Davis and Davi Transportation. The case was initially stayed as to Davis, because he had filed for personal bankruptcy. ECF 13 (citing 11 U.S.C. § 362). But, Davis's debts were subsequently discharged. Thus, plaintiffs seek a default judgment only as to Davi Transportation. ECF 34.

Final judgment can be entered as to one of multiple defendants if the court "expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). But, an order or decision "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Id*.

Plaintiffs' Motion did not address the implications of granting default judgment only as to Davi Transportation, while its owner, codefendant Davis, was involved in bankruptcy proceedings. ECF 34-1.  Nor did plaintiffs explain the significance, if any, of the stay as to Davis, or the

---

[4] David Rodwin, counsel for plaintiffs, attests the relevant living wage rates in Baltimore City are $11.29 per hour for 2015, $11.46 per hour for 2016, and $11.65 per hour for 2017. ECF 34-8 (Rodwin Declaration), ¶ 4.

subsequent discharge.  *Id.*  And, the Court was concerned about the principles articulated in *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552 (1872).

In a status report of July 9, 2019, plaintiffs asserted that "joint employers are jointly and separately liable for FLSA violations" under the FLSA and Maryland wage and hour laws.  ECF 37 at 1 (citing *Salinas v. Comm. Interiors, Inc.*, 848 F.3d 125, 141-42 (4th Cir. 2017)).  As a result, they argued that granting default judgment as to Davi Transportation is "appropriate," because Mr. Davis and Davi Transportation are "joint employers of Plaintiffs."  ECF 37 at 1.

As I see it, any potential problem of inconsistent damage awards is no longer of concern. This is because the bankruptcy court discharged Davis's debt.  *In re James Davis*, RAG-17-26336, ECF 94 (Bankr. D. Md.) (Bankruptcy Discharge).  As plaintiffs reported, the discharge extended to plaintiffs' claims.  ECF 37 at 2 (stating that "[m]ost debts are discharged" and not listing any exception under which plaintiffs' claims would fall).

Accordingly, there is no just reason for delay.  Entry of default judgment is appropriate as to Davi Transportation.  Fed. R. Civ. P. 55(b).

### D.     Damages

Pursuant to the Settlement Agreement of December 3, 2018 (ECF 26-3), Transdev agreed to pay plaintiffs a total of $130,000.  *Id.* at 3. Plaintiffs candidly assert that this amount "constitutes nearly all of Plaintiffs' estimate of the unpaid wages and damages to which they are entitled under the FLSA and MWHL."  ECF 34-1 at 11 (citing ECF 26-1 at 7).  But, the Motion seeks "the remaining recovery" to which plaintiffs claim they are entitled under the living wage ordinance of the Baltimore City Code and the MWPCL, or, alternatively "what they would be entitled to under the MWHL and MWPCL.[1]"  ECF 34-1 at 11.

In particular, under the MWPCL, plaintiffs assert that, "[i]n addition to wages owed, the Court may award 'an amount not exceeding three times the [unpaid] wage' if the employer's violation of the MWPCL is not the result of a bona fide dispute about whether the wages are due." ECF 34-1 at 11-12 (quoting *Lopez v. Lawns 'R' Us*, DKC-07-2979, 2008 WL 2227353, at *4 (D. Md. May 23, 2008))[5] (in turn quoting L.E. § 3-507.1(b), now found at § 3-501.2(b)). Thus, at the very least, plaintiffs seek treble damages. However, plaintiffs make clear that they "have offset the total amount owed by $130,000 to account for the recovery they received in the Transdev settlement." ECF 34-1 at 11 n.9.

Specifically, plaintiffs request total unpaid wages and damages in the amount of $276,941.65, apportioned among plaintiffs in individual judgments, as follows: $7,611.02 to Trekell Gaither; $5,063.32 to Whitney Davis; $122,355.31 to Wayne Flemming; $42,410.21 to Crystal Kendricks; and $99,501.76 to Robert Lemon. ECF 34-1 at 11.

As indicated, the FLSA provides that, for any hours worked in excess of forty hours per week, an employee shall "receive[] compensation for his employment . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207. And, Maryland law is to the same effect. *See* L.E. § 3-427.

The amount defendants owe to plaintiffs is calculated based on plaintiffs' rate of compensation and the number of unpaid hours each worked. "In cases such as the present one in which wage and pay records, required to be kept by employers pursuant to 29 U.S.C. § 211(c), are not available, [the employees] must show the amount and extent of their improperly compensated work 'as a matter of just and reasonable inference.'" *Lopez*, DKC-07-2979, 2008 WL 2227353, at *3 (quoting *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1116 (4th Cir. 1985)); *see Anderson*

---

[5] The opinion was authored by Magistrate Judge Jillyn Schulze.

*v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) ("Due regard must be given to the fact that it is the employer who has the duty under . . . the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out his burden of proof."), *superseded by statute on other grounds, as stated*, *inter alia*, in *Integrity Staffing Solutions, Inc.*, 574 U.S. at 36.

An employee's statement under oath "as to his recollection of the hours he worked and the pay he received, if considered credible by the trier of fact, is sufficient to establish a prima facie case of wages owed." *Lopez*, 2008 WL 2227353, at *3. And, if the employer does not successfully rebut the employee's statement, "[t]he Court may award damages based on Plaintiffs' testimony even though the amounts claimed are only approximated and not perfectly accurate." *Id.*[6]

Ms. Davis avers that she worked as a paratransit driver "for approximately five and a half weeks from April 2017 through May 2017." ECF 34-3 (Davis Declaration), ¶ 1. Her duties as a paratransit driver included, among other things, "picking up and dropping off individuals with disabilities and their aides, affixing wheelchairs to the vehicle, refilling the vehicle with gasoline at the end of the workday, and completing required paperwork." *Id.* ¶ 2. She claims that Davis and Davi Transportation paid her "$6 for each pickup or drop-off of an individual in a wheelchair;

---

[6] Judge Grimm explained in *Monge*, 751 F. Supp. 2d at 789 n.5: "In *Lopez*, 2008 WL 2227353, at *3 n.5, Magistrate Judge Schulze noted that '[t]hese standards apply to FLSA claims . . . . but application of the FLSA standards [to MWCPL claims as well] is appropriate in light of Maryland's similar requirement that employers keep records of employees' hours and wages' and that '[c]ases indicate that the same kind of evidence—including an employee's testimony—would be competent under Maryland law.'"

$4 for each pickup or drop-off of an ambulatory person; and $1 if an individual scheduled to be picked up or dropped off was not available." *Id*. ¶ 3.  Further, Ms. Davis asserts that she "worked five days per week and about 11 hours per day but was paid only about $1,116." *Id*. ¶ 4.  And, she was never paid overtime when she "worked more than eight hours per day or 40 hours per week." *Id*. ¶ 6.

After accounting for the $3,602.74 that Ms. Davis received pursuant to the Settlement Agreement with Transdev, she seeks treble damages in the sum of $5,063.32, for her unpaid living and overtime wages under the Baltimore City Code living wage ordinance, enforced through the MWPCL. *Id*. ¶ 9.  Alternatively, Ms. Davis seeks treble damages under the MWHL and MWPCL, in the sum of $2,072.70.  *Id*.

Gaither was employed as a paratransit driver "for approximately eight weeks from April 2017 through May 2017."  ECF 34-4 (Gaither Declaration), ¶ 1.  He claims that he "worked five days per week and about 12 hours per day but was paid only about $600 every two weeks."  *Id*. ¶ 4.  Gaither maintains that he was never paid overtime when he "worked more than eight hours per day or 40 hours per week."  *Id*. ¶ 6.

After accounting for the $4,760.98 that Gaither received under the Settlement Agreement, he seeks treble damages in the total sum of $7,611.02, pursuant to the Baltimore City Code, as "enforced through the MWPCL…."  *Id*. ¶ 9.  Alternatively, he seeks treble damages as to his unpaid State-law minimum and overtime wages, pursuant to the MWHL and MWPCL, in the sum of $2,739.02. *Id*.

Flemming asserts that he worked as a paratransit driver from approximately April 2015 to August 2017.  ECF 34-5 (Flemming Declaration), ¶ 1.  However, between approximately February 2017 and April 2017, he "worked in a different unit" and is "not seeking compensation for work"

he did during that period of three months.  *Id.*  Of relevance here, he avers that he "worked six days per week and about 11 hours per day but was paid only about $825 every two weeks."  *Id.* ¶ 4.  According to Flemming, he was never paid overtime when he "worked more than eight hours per day or 40 hours per week."  *Id.* ¶ 6.

After accounting for $57,418.28 that Flemming received from the Transdev settlement, he seeks treble damages for his unpaid living and overtime wages under the Baltimore City Code's living wage ordinance, in the sum of $122,355.31.  *Id.* ¶ 10. Alternatively, he seeks treble damages of $37,848.22 under the MWHL and MWPCL.  *Id.*

Kendricks was employed as a paratransit driver from approximately September 2015 through February 2016, and then again from approximately November 2016 through March 2017. ECF 34-6 (Kendricks Declaration), ¶ 1.  She avers that she "worked between four and six days per week and about 11 hours per day but was paid only about $600 every two weeks."  *Id.* ¶ 4.  Further, she alleges that she "was never paid an overtime rate" when she "worked more than eight hours per day or 40 hours per week."  *Id.* ¶ 6.

In view of the $21,159.78 that Kendricks received pursuant to the Settlement Agreement, she seeks treble damages for unpaid living and overtime wages under the Baltimore City Ordinance, in the sum of $42,410.21.  *Id.* ¶ 10.  Alternatively, she seeks $15,773.41 under the MWHL and the MWPCL.

Lemon avers that he worked as a paratransit driver from approximately April 2015 through September 2017.  ECF 34-7 (Lemon Declaration), ¶ 1.  He claims that he "worked five or six days per week and about 12 hours per day but was paid only about $800 every two weeks."  *Id.* ¶ 4.  In addition, he was never paid overtime when he "worked more than eight hours per day or 40 hours per week."  *Id.* ¶ 6.  And, when his employment with Davi Transportation ended, defendants

refused to pay him for his "last several pay periods, which was at least four weeks of work." *Id.*
¶ 7.

After accounting for the $43,058.24 that Lemon received under the Settlement Agreement

with Transdev, he seeks treble damages under the Baltimore City Code's living wage ordinance,

in the sum of $99,501.76. *Id.* ¶ 10. Alternatively, under the MWPCL and the MWPCL, he seeks

treble damages of $29,571.76. *Id.* ¶ 10.

In his Declaration (ECF 34-8), David Rodwin, Equire, plaintiffs' counsel, tabulated the

calculation of plaintiffs' requests for damages. First, to determine the amount of uncompensated

work plaintiffs performed, Rodwin relied on plaintiffs' declarations, which set forth their

approximate dates of work, schedules, and pay. *Id.* ¶ 3. Then, to determine the wages owed to

each plaintiff, Rodwin relied on plaintiffs' affidavits, as well as, *id.* ¶ 4:

> (i) state law setting the Maryland minimum wage at $8.00 per hour from January 1
> through June 30, 2015, $8.25 per hour from July 1, 2015 through June 30, 2016,
> and $8.75 per hour from July 1, 2016 through June 30, 2017; (ii) federal and state
> law requiring that all hours worked in excess of 40 are compensable at one and a
> half times the regular rate and that all non-overtime hours worked are compensable
> at the regular rate of pay; (iii) Baltimore City law setting the applicable living wage
> rates at $11.29 (fiscal year 2015), $11.46 (fiscal year 2016), and $11.65 (fiscal year
> 2017); and (iv) Baltimore City law requiring that all hours worked in excess of eight
> in a single workday are compensable at one and a half times the regular rate.

To calculate plaintiffs' earnings under the FLSA, MWHL, and MWPCL, Rodwin tabulated

each plaintiff's "weekly earning as the sum of (i) the product of the plaintiff's legal minimum wage

and weekly hours worked up to and including 40 that the Plaintiff attested he or she worked in his

or her affidavit; and ii) the product of the Plaintiff's overtime rate and the weekly hours over 40

that the Plaintiff attested he or she worked in his or her affidavit." *Id.* ¶ 5. As to Fleming,

Kendricks, and Lemon, Rodwin also "factored in [their] attestations … that they were not paid for

their last four weeks of work." *Id.* ¶ 7. Then, Rodwin determined each plaintiff's "unpaid wages

by tabulating the difference between the amount the Plaintiff earned and the amount he or she was paid." *Id.* ¶ 8.  To calculate the requested treble damages pursuant to the MWPCL, Rodwin tripled the amount of unpaid wages due.  *Id.* ¶ 9.  Finally, Rodwin offset each plaintiff's "total amount of unpaid wages due" by the amount each plaintiff received as a result of the Settlement Agreement with Transdev.  *Id.* ¶ 10.  *See also* ECF 34-8 at 8.  He used a similar process for calculations under the Baltimore City Code.

Upon review of the submissions and the applicable statutes, I am satisfied that plaintiffs have established that Davi Transportation violated the FLSA, the MWHL and the MWPCL for each plaintiff, by failing to pay the required minimum wage and overtime wages.  In particular, they have stablished that plaintiffs were employed by defendant; they were not compensated for all hours worked; the work was covered by the FLSA and Maryland law; and Davi Transportation was an employer under the statutes.  *See* L.E. § 3-501(b).

However, I decline to award damages under the Baltimore City Code.  Plaintiffs candidly concede that they are unaware of any court decision "examining the enforceability of the Baltimore City Code's living wage ordinance … through the MWPCL."  ECF 34-1 at 8, n.8.  In a footnote, they asked the Court to certify the question to the Maryland Court of Appeals.  *Id.*  I decline to do so.

Among other reasons, plaintiffs expressly requested damages, in the alternative, under Maryland law, and the award is consistent with that express request.  Moreover, I am mindful that, under the FLSA, plaintiffs are entitled only to double damages, not treble damages.  *See*, *e.g.*, *Villatoro v. CTS & Associates, Inc.*, DKC-14-1978, 2016 WL 2348003 (D. Md. May 4, 2016).  Yet, I have approved the treble damage request under Maryland law.  A greater award seems excessive.

### E.    Attorneys' Fees

Plaintiffs request legal fees and costs in the amount of $26,776.03.  ECF 34-1 at 1.  Two firms represent plaintiffs: the Public Justice Center ("PJC") and Outten & Golden LLP ("O&G").

Pursuant to 29 U.S.C. § 216(b), L.E. § 3-507.1, and L.E. § 3-427(d), a prevailing party is entitled to an award of reasonable attorney's fees as well as costs.  *See Randolph v. PowerComm Construction, Inc.*, 780 Fed. App'x 16, 21 (4th Cir. 2019) (per curiam).   In calculating the appropriate award of attorneys' fees, the court must first determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008); *see Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that, "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award") (citations and internal quotation marks omitted).  Then, the court must subtract fees for hours spent on unsuccessful claims if unrelated to successful ones.  And, it must evaluate the degree of success of the plaintiffs.  *Randolph*, 780 Fed. App'x at 22; *see Jones v. Southpeak Interactive Corp.*, 777 F.3d at 658, 676 (4th Cir. 2015).

Notably, there were no unsuccessful plaintiffs here.

"The Supreme Court has indulged a 'strong presumption'" that the "lodestar" figure, as defined by the Court in *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983), "represents a reasonable attorney's fee." *McAfee v. Boczar*, 738 F.3d 81, 88-89 (4th Cir. 2013).  As indicated, to determine the lodestar figure, courts must multiply "'the number of reasonable hours expended times a reasonable rate.'"  *Id.* (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009).

Notably, when entering a default judgment, the court may make an award of attorney's fees for a lesser amount than the moving party requested. *See DirecTV v. Agee*, 405 F. Supp. 2d 6, 8 (D.D.C. 2005) (concluding, on granting default judgment, that "plaintiff's requested relief … for attorneys' fees [was] excessive" and awarding half of what was requested in the plaintiff's motion). In other words, a trial court is vested with discretion in determining the award of fees, given its "'superior understanding of the litigation.'" *Thompson v. HUD*, MJG-95-309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (quoting *Daly v. Hill*, 790 F.2d 1071, 1078–79 (4th Cir. 1986)); *see also McAfee*, 738 F.3d at 88; *Robinson*, 560 F.3d at 243.

The court determines a reasonable fee by assessing whether the hours worked were reasonable and whether the request includes hours that were unnecessary or duplicative. Thus, the plaintiff "must show that the number of hours for which he seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary." *Travis v. Prime Lending*, 3:07-cv-00065, 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008) (concluding, after initially determining that the attorney's hourly rate was reasonable, that attorney's fees requested by plaintiff were reasonable, based on documentation of hours worked and the work completed); *Flynn v. Jocanz*, 480 F. Supp. 2d 218, 220–21 (D.D.C. 2007) (awarding requested attorney's fees based on affidavits and the record).

In evaluating the reasonableness of the requested legal fee, the court considers the twelve factors articulated in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717–19 (5th Cir. 1974), and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc*., 577 F.2d 216, 226 (4th Cir. 1978); *see McAfee*, 738 F.3d at 88-89. The *Johnson* factors follow, 488 F.2d at 717-19:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the

client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Here, PJC and O&G recovered legal fees from Transdev in the total amount of $30,000. ECF 28-1 at 8.  They seek an additional award of $8,981 and $17,795.03, respectively.  ECF 34-1 at 1.  This totals $26,776.03.

Sally Dworak-Fisher, Esquire, the lead attorney of PJC's Workplace Justice Project, avers that she has "been involved in significant litigation and appeals in both federal and state courts, including numerous wage and hour cases on behalf of low-wage workers."  ECF 34-9 (Dworak-Fisher Declaration), ¶ 3 (citing *Salinas v. Commercial Interiors*, 848 F.3d 125 (4th Cir. 2017)). Dworak-Fisher graduated from law school in 1997, and is admitted to practice in New York, Maryland, and the District of Columbia.  *Id.* ¶ 2.

David Rodwin, a PJC staff attorney who worked on this case, graduated from law school in 2012.  He is licensed to practice law in the State of Maryland.  *Id.* ¶ 6.

Dworak-Fisher attests that a total of 124.2 hours of work was performed by the two lawyers, and a paralegal; their hourly billing rates are $400, $215, and $120, respectively.  This totals $28,981.  *Id.* ¶ 11.  These hourly rates are consistent with Appendix B to the Court's Local Rules.

PJC notes that it already recovered $20,000 in fees and costs in connection with the Transdev settlement (ECF 26-3).  Therefore, PJC seeks the remaining fees and costs from Davi Transportation, in the sum of $8,981.  ECF 34-9, ¶ 12.

PJC has summarized the hours expended by its lawyers and the paralegal.  *See* ECF 34-9 at 3.  In regard to the work itself, however, no detail was provided, notwithstanding the requirements of Appendix B to the Court's Local Rules, as discussed, *infra*.  Instead, counsel states

that, if requested by the Court, they "will provide the billing statement reflecting the time entries…." *Id.* In addition, PJC asserts generally that the time expended was for legal research, case development and fact investigation, pleadings, and settlement negotiation. ECF 34-9, ¶ 7. And, counsel asserts that an effort was made to avoid unnecessary and duplicative work, and that Ms. Dworak-Fisher's role was largely supervisory. *Id.* ¶ 9.

O&G is a 60-plus law firm with offices in Washington, D.C., New York City, Chicago, and San Francisco. ECF 34-10, ¶ 2. Sally J. Abrahamson, an O&G partner, asserts that "O&G is nationally recognized for its expertise in litigating complex class actions, including wage and hour cases." ECF 34-10 (Abrahamson Declaration), ¶ 3 (citing *Ballinger v. Advance Magazine Publishers, Inc.*, 13-cv-4036, 2014 WL 7495092 (S.D.N.Y. Dec. 29, 2014)).

Abrahamson graduated from law school in 2009 and is the head of the firm's Class Action Practice Group in Washington, D.C. *Id.* ¶ 4. She is a member of the bars of Texas, New York, and the District of Columbia. *Id.* Michael C. Danna, an associate at O&G, graduated from law school in 2017 and is admitted to practice in New York. *Id.* ¶ 5. Hannah Cole-Chu, another O&G associate, graduated in 2017 and is a member of the Maryland State Bar. *Id.* ¶ 6. It appears that all three worked on the case.

Abrahamson attests that the hourly billing for this case amounts to $26,798, based on a total of 67.9 hours of work performed by a partner, two associates, and a paralegal, whose hourly billing rates are $550, $300, $315, and $260, respectively. *Id.* ¶ 12. Also, O&G requests reimbursement for $997.03 in expenses. *Id.* ¶ 13. Per the Settlement Agreement with Transdev (ECF 26-3), O&G received $10,000 in fees and costs. As such, O&G seeks the remaining amount of fees and costs, in the sum of $17,795.03. ECF 34-10, ¶ 14.

As to O&G, the requested hourly rates are not consistent with the reasonable rates for attorneys with similar experience, as set forth in Appendix B of the Court's Local Rules, titled "Rules And Guidelines For Determining Attorneys' Fees In Certain Cases."  Rule 3 to Appendix B provides the following rates:

a.  Lawyers admitted to the bar for less than five (5) years: $150-225.

b.  Lawyers admitted to the bar for five (5) to eight (8) years: $165-300.

c.  Lawyers admitted to the bar for nine (9) to fourteen (14) years: $225-350.

d.  Lawyers admitted to the bar for fifteen (15) to nineteen (19) years: $275-425.

e.  Lawyers admitted to the bar for twenty (20) years or more: $300-475.

f.  Paralegals and law clerks: $95-150.

As indicated, Abrahamson, an O&G partner who was admitted to the bar ten years ago, seeks compensation at the rate of $550.  ECF 34-10, ¶ 12.  Danna and Cole-Chu, associates who were admitted three years ago, seek compensation at the rate of $300 and $315, respectively.  *Id.* And, Ms. Lorenzana, a paralegal, claims the hourly rate of $260.  *Id.*  In her Declaration, Abrahamson fails to address why the Court should depart from Appendix B in determining O&G's hourly rates.  *Id.*  Accordingly, any fee award will be based on the following hourly rates: Abrahamson, $350; Danna, $225; Cole-Chu, $225; Lorenzana, $150.

Like the PJC, O&G did not submit its billing records.  It merely provided a chart summarizing the hours of work for each of four people.  ECF 34-10 at 4.  And, it offered to provide billing statements upon request.  *Id.*  Further, Abrahamson claims that O&G expended time for legal research, case development, fact investigation, pleadings, motion practice, and settlement negotiation. ECF 34-10, ¶ 7.  And, she asserts that O&G "avoided unnecessary or duplicative work."  *Id.* ¶ 10.

Appendix B, Rule 1.b, expressly requires the submission of "time records" with a fee application.  Moreover, the rule requires that the time expended shall be organized by category, such as pleadings, motions, hearings, discovery, investigation, etc.  The tasks must be separately recorded.  Moreover, under Rule 2(d) of Appendix B, only one lawyer is to be compensated for conference, unless otherwise justified.

In this case, suit was filed two years ago, in May 2018.  ECF 1.  Transdev moved to dismiss, ECF 9, but the response deadline was extended several times.  *See* ECF 10; ECF 11; ECF 12; ECF 16; ECF 17; ECF 18; ECF 19; ECF 20; ECF 21.  In fact, the case settled with Transdev without plaintiff having to respond to the motion. *See* ECF 26.  Suit was dismissed against Transdev on December 6, 2018.  ECF 31.

As to defendant James Davis, he filed for personal bankruptcy on December 5, 2017.  ECF 13.  Therefore, little effort was directed at recovery from him.

Default was entered against Davi Transportation on December 4, 2018.  ECF 28.  And, on January 30, 2019, counsel submitted a very well prepared motion for default judgment.  ECF 34. Indeed, the Motion reflects considerable effort and work.  And, as noted earlier, the Court also required counsel to submit various reports.

But, in the absence of any billing records, I cannot properly review the fee requests.  For example, I cannot determine whether there was duplication of work or the necessity of the work. Moreover, the lawyers have not explained why two entities were involved in this case or what role each played in the case.  To be sure, Abrahamson asserts that O&G did not bill for any lawyer or support staff who worked less than five hours on this case.  ECF 34-10, ¶ 8.  But, this does not mean that any lawyer actually performed a service that was not billed.

O&G also seeks to recover costs of $997.03.  ECF 34-10, ¶ 13.  In particular, it requests reimbursement for court filing fees, service process fee, printing and scanning, research, and mailing fees.  *Id.*  These costs are reasonable.

In an FLSA action, the "[p]ayment of costs to a prevailing plaintiff is mandatory. . . ." *Lopez*, 2008 WL 2227353, at *7. Under the FLSA, and other similar fee-shifting statutes, "the costs that may be charged to losing defendants include 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.'" *Id.* (finding a $350 filing fee and a $200 service process fee "well within the categories of normal and necessary costs of litigation that would normally be charged to paying clients").

## IV.  Conclusion

For the reasons stated above, I shall grant the Motion (ECF 34) in part and deny it in part. Specifically, I shall award total damages of $88,005.11, as set forth in the Order filed herewith, and costs to O&G of $997.03.  However, I shall deny the fee requests, without prejudice to the right of plaintiffs to submit revised fee petitions that conform to Appendix B, due by June 25, 2020.

An Order follows, consistent with this Memorandum Opinion.


Date: May 22, 2020                                    _____/s/_____

                                                                    Ellen L. Hollander
                                                                    United States District Judge